**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------- X
                         :

CYNTHIA FUKELMAN, TSIPORA      :
KUBA, YOUNG SOOK SANCHEZ,    :
BRIAN MILLER JOHN SUAREZ,     :       **FIRST AMENDED COMPLAINT**
TRACEY ALLEN, ARIEL DAVID,     :
YARON GILINSKY, TOMER BITON,  :
AND ANTHONY PANZA          :       18 CV 0002 (PKC) (PK)
                         :
           Plaintiffs       :
       v.                :       **Jury Trial Demanded**
                         :
DELTA AIR LINES, INC.,        :
           Defendant.     :
-------------------------------------------------- X

      Plaintiffs, Cynthia Fukelman, Tsipora Kuba, Young Sook ("Suzie") Sanchez, Brian Miller, John Suarez, Tracey Allen, Ariel David, Yaron Gilinsky, Tomer Biton and Anthony Panza, by and through their undersigned attorneys, complaining of Defendant, Delta Air Lines, Inc., bring the instant action requesting judgment in their favor, and against Defendant, and in support thereof, allege, upon information and belief, as follows:

**NATURE OF ACTION**

    1.    Delta Air Lines has engaged in a pattern of intentionally discriminating and retaliating against ethnically Jewish, Hebrew and/or Israeli employees and passengers traveling to Israel, based upon their race and ancestry, and of intentionally discriminating against non-Jewish Flight Attendants who have associated with Jewish Flight Attendants or customers, or were perceived to be so associated.

2.      Delta has engaged in a pattern of intentionally discriminating against employees and customers of Jewish, Hebrew and/or Israeli ethnicity by altering, restricting, changing and denying to said employees and customers the same terms and conditions of employment and passage as granted to non-Jewish, Hebrew and/or ethnic Israeli employees and customers, including but not limited to the following:

a.      Delta has encouraged and maintained an anti-Jewish, Hebrew and ethnic Israeli attitude among management, who, through words and deeds, operate under an express assumption that ethnic Jews and Israelis, as employees and passengers, cannot be trusted, are aggressive and inappropriate, and engage in what are deemed to be "strange" behaviors by conducting prayers on the flight and requiring special dietary accommodations (kosher meals).

b.      Delta has engaged in targeted enforcement actions against Jewish and other Flight Attendants who share their companion travel passes with other Jewish individuals who fly to Tel Aviv, solely on the basis of their Jewish and Israel ethnicity and ancestry, and when sharing such travel passes is not in violation of Delta's rules, but is rather a benefit of employment provided by Delta. When Jewish and non-Jewish employees have shared their travel benefits with ethnically Jewish, Hebrew and/or Israeli persons, Delta has engaged in anti-Semitic employee investigations and disciplinary actions against such employees, targeting them for suspension or termination.

c.      Delta has punished Plaintiffs for their ethnicity or association with others and has either restricted their employment rights, denied them promotions, or subjected them to harassment and abuse, for pretextual reasons, and as part of the pattern of discrimination against those of Jewish, Hebrew or Israeli ethnicity and those who associate with them.

d.     Plaintiffs bring this action seeking damages and injunctive relief from this Honorable Court against Delta to force Delta to stop this insidious racial discriminatory and anti-Semitic misconduct of Delta Air Lines.

3.     Plaintiffs are all Flight Attendants employed or previously employed by Delta Air Lines, Inc., one of the largest passenger air carriers in the world.  Plaintiffs are primarily senior Flight Attendants, with experience as Flight Attendants ranging from in excess of 7 years to in excess of 40 years.   Five of the Plaintiffs are Flight Attendants of Jewish, Hebrew and Israeli ethnicity and five of the Plaintiffs are Flight Attendants who, were associated with persons of said ethnicity.

4.     In addition to and/or in the alternative, Delta Air Lines has engaged in a pattern of intentionally discriminating and retaliating against senior employees based upon their age.

5.     Delta has publicly stated that it is turning its attention to millennials, those born from the early 1980's to the late 1990's. Delta's CEO, Edward Bastian, has said by 2020, half of Delta's customers will be millennials and it is anticipated that Delta's employees will mirror the same balance.

6.     Upon information and belief, Delta has engaged in a pattern and practice of using pretextual, embellished or untruthful allegations to terminate flight attendants who are over 40 years old.

7.     Bastian stated during a 2016 interview, "There's no question that the face of Delta's employees is changing, it's becoming younger…. We have got to stay ahead of that change and make certain our product and our service offerings are fresh."  Delta News Hub, May 2, 2016.

8.      Upon information and belief Delta's website, called DeltaNet -- highlighted it's commitment to hiring a younger workforce, with a large headline: "Delta commits to hire young American workers for 'First Job'."

9.      Upon information and belief, Delta has no plans of expanding its total number of flight attendants.

10.     Delta is not in a position to hire a large number of employees to fulfill their millennial goals without removing a significant number of Delta's senior employee pool. This means that Delta's older employees will have to leave their employment either voluntarily or involuntarily.

11.     In 2017, Delta released a reality show called "Earning Our Wings" about becoming a flight attendant. Upon information and belief, one of the motivations for this show was to attract younger "millennial" employee applicants.

12.     Upon information and belief, Delta has a de facto policy to terminate or discipline older employees due to perceived or manufactured infractions of company rules.

13.     Upon information and belief, from publicly available sources:

   a. Delta's most recent incoming classes of flight attendants have been predominantly under 30 years old.

   b. Upon information and belief, a Delta flight attendant based in Detroit, "Employee A", who flies throughout the system, observed that the ages of flight attendants was going down, mostly because incoming classes were predominantly young people.

   c. Employee A felt that it was obvious that Delta was getting rid of older flight attendants so they could be replaced by younger ones.

d.  Employee A learned of multiple cases where older Delta employees were terminated for false reasons or trivial reasons that would not have warranted termination in past years.

e.  Employee A is over 40 years old and began working as a flight attendant for Northwest Airlines before its merger with Delta in 1979. Based upon her observation (and pursuant to the flight attendant seniority lists that she has seen) the total number of flight attendants in the employ of Delta Air Lines has not been expanding -- yet young flight attendants now dominate the incoming ranks. Employee A further stated this means that Delta is replacing older flight attendants in increments. Older flight attendants are being phased out -- by forced retirement and involuntary termination -- in favor of younger flight attendants, according to said Employee A.

f.  The EEOC's Miami office is investigating claims of age discrimination by Delta Air Lines in which the corporation fired or forced out older flight attendants. The victims have claimed false, exaggerated or pretextual reasons for the adverse actions against them.

g.  Another Delta Flight Attendant, "Employee B," who was first hired as a flight attendant in 1978 with Northwest Airlines prior to its merger with Delta, is 74 years old. According to her sworn EEOC charge, she was forced to retire for an alleged violation of company policy, which alleged violation "had not caused the termination of younger employees.  Thus, I was forced to resign (retire) because of my age."  Employee B's EEOC charge included a formal charge of age discrimination.

h.  Employee B's sworn EEOC charge, stated, further, that, "I think there is a provable trend at Delta to rejuvenate its work force, i.e. make it younger.  What I mean by that is

that it is terminating (or forcing termination of) older employees upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters of reprimand and/or suspensions.  What this means is that older employees are being let go or forced out and replaced with younger employees earning fractionally less than their predecessors.  Delta is even resorting to false or exaggerated allegations."  Thus, the complainant identified age discrimination and pretext in the reasons selected to fire her.

i.  According to the EEOC charge of another Delta flight attendant, "Employee C",  he was over 40 years old when fired from Delta and alleged in his EEOC charge that the company committed age discrimination against him.  He claimed that, "there is a provable trend at Delta to 'rejuvenate' its work force, i.e. make it younger.  What I mean by that is that it is terminating older employees upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters or reprimand and/or suspensions."  Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

j.  According to another EEOC charge, with similar accusations, Delta is getting rid of older flight attendants to make room for young ones, thus, age discrimination had been committed, according to the sworn EEOC charge.  The complainant was 67 years old when fired for reasons that he claimed under oath would not have caused termination previously.  This was done to make room for young flight attendants.  He had worked for Delta and Northwest Airlines as a flight attendant since 1987.  Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

k.  Upon information and belief, according to allegations in federal court pleadings, several other Delta flight attendants have also noted the trend of getting rid of older flight attendants to be replaced by young ones.  One stated that all new hires as flight attendants are in their mid-20s and early 30s.  Another stated that Delta Air Lines was obviously moving to terminate its older flight attendants to make room for new ones who were completing their training classes.  Trivial reasons were selected to force out older flight attendants, which reasons would not have caused significant discipline at all in prior years, they informed plaintiff.

14.    In addition to and/or in the alternative, Delta wrongfully has engaged in a pattern of intentionally discriminating and retaliating against employees on a discriminatory basis, in retaliation for using their FMLA rights, and for complaining about discrimination or engaging in protected civil rights activity under federal employment and anti-discrimination laws, including but not limited to those laws referenced in this action.

15.    In addition to and/or in the alternative, Delta wrongfully has engaged in a pattern of intentionally discriminating and retaliating against employees on a discriminatory basis, in retaliation for requests and exercise of rights under the ADA.

## **PARTIES**

16.    Plaintiff, Cynthia Fukelman, is an adult individual, residing at 1020 Grand Concourse, Apt. 23L, Bronx, New York.  At all times material hereto, Ms. Fukelman was employed by Defendant, Delta Air Lines, as a Flight Attendant.  In her capacity of an employee of Delta, Ms. Fukelman was a Flight Attendant on the New York to Tel Aviv flight and has worked as a Flight Attendant for Delta for over 10 years.  Plaintiff is of Jewish, Hebrew and Israeli ethnicity. Plaintiff's employment was wrongfully terminated by Delta in or around March, 2017.

17.     Plaintiff, Tsipora Kuba, is an adult individual residing at 365 Kinghorn Street, Staten Island, New York, 10312. At all times material hereto, Ms. Kuba was employed by Defendant, Delta Air Lines, as a Flight Attendant.  In her capacity of an employee of Delta, Ms. Kuba was a Flight Attendant on the New York to Tel Aviv flight and has worked as a Flight Attendant for Delta for over 21 years.  Plaintiff is of Jewish, Hebrew and Israeli ethnicity.

18.     Plaintiff, Young Sook (Suzie) Sanchez, is an adult individual, residing at 271 Brevoort Street, Kew Gardens, New York.  At all times material hereto, Ms. Sanchez was employed by Defendant, Delta Air Lines, as a Flight Attendant.  In her capacity of an employee of Delta, Ms. Sanchez was a Flight Attendant on the New York to Tel Aviv Flight and has worked as a flight attendant for Delta for over 30 years.  Plaintiff shared her flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully disciplined and demoted for same, due solely to the ethnicity of the person with whom she associated and her perceived connection to same.

19.     Plaintiff, Brian Miller, is an adult individual, residing at 2106 Sableshire Way, Conyers, GA, 30013. At all times material hereto, Mr. Miller was employed by Defendant, Delta Air Lines, as a Flight Attendant and has worked as a flight attendant for Delta for over 11 years. Plaintiff shared his flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully terminated for same, due solely to the ethnicity of the person with whom he associated and her perceived connection to same.

20.     Plaintiff, John Suarez, is an adult individual, residing at 1227 Meridian Ave. Apt. 1, Miami Beach Fl, 33139. At all times material hereto, Mr. Suarez was employed by Defendant, Delta Air Lines, as a Flight Attendant for over 12 years.  Plaintiff shared his flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully terminated for same,

due solely to the ethnicity of the person with whom he associated and his perceived connection to same.

21.    Plaintiff, Tracey Allen, is an adult individual, residing at 4823 Camden Drive Southwest, Conyers, GA 30094. At all times material hereto, Ms. Allen was employed by Defendant, Delta Air Lines, as a Flight Attendant and has worked as a flight attendant for Delta for over 19 years.   Plaintiff shared her flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully terminated for same, due solely to the ethnicity of the person with whom she associated and her perceived connection to same.

22.    Plaintiff, Ariel David, is an adult individual residing at 1283 Farnsworth Lane, Buffalo Groves, Illinois 60089. In his capacity of an employee of Delta, Mr. David was a Flight Attendant on the New York to Tel Aviv flight and has worked as a Flight Attendant for Delta for over 11 years.  Plaintiff is of Jewish, Hebrew and Israeli ethnicity.  Plaintiff shared his flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully disciplined for same, due to his ethnicity and to the ethnicity of the person with whom he associated and his perceived connection to same.

23.    At all times relevant to this action, Plaintiff, Yaron Gilinsky, is an adult individual residing at 144 N. Tustan St., Orange, CA 92867. In his capacity of an employee of Delta, Mr. Gilinsky was a Flight Attendant on the New York to Tel Aviv flight and has worked as a Flight Attendant for Delta for over 7 years.  Plaintiff is of Jewish, Hebrew and Israeli ethnicity. Plaintiff shared his flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully terminated for same, due to his ethnicity and to the ethnicity of the person with whom he associated and his perceived connection to same.

24.     At all times relevant to this action, Plaintiff, Tomer Biton, is an adult individual residing at 2138 East 69th Street, Brooklyn, NY 11234. In his capacity of an employee of Delta, Mr. Biton was a Flight Attendant on the New York to Tel Aviv flight and has worked as a Flight Attendant for Delta for over 7 years.  Plaintiff is of Jewish, Hebrew and Israeli ethnicity. Plaintiff shared his flight benefits with an individual of Jewish, Hebrew and Israeli ethnicity and was wrongfully terminated for same, due to his ethnicity and to the ethnicity of the person with whom he associated and his perceived connection to same.

25.     At all times relevant to this action, Plaintiff, Anthony Panza, is an adult individual residing at 331 E. McNab, Rd., Pampano Beach, Florida, and previously also maintained a residence in New York.  At all times material hereto, Mr. Panza was employed by Defendant, Delta Air Lines, as a Flight Attendant.  In his capacity of an employee of Delta, Mr. Panza was a flight attendant on the New York to Tel Aviv Flight, and has worked as a flight attendant for Delta for over 30 years.  While working on Tel Aviv flight, Mr. Panza was subjected to a hostile work environment, unwarranted discipline and restriction of his flight benefits rights, solely for his association with and support of ethnic Jews, Hebrew speakers and/or ethnic Israelis

26.     Delta Air Lines, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with headquarters in Atlanta, Georgia.  Delta employs more than 80,000 employees worldwide and, as of October, 2016, flew to 54 countries on 6 continents.  In 2013, Delta was the world's largest airline in terms of passengers carried, at 120.6 million passengers. Delta has numerous key hubs and markets including but not limited to New York, at JFK International Airport and LaGuardia Airport.

## JURISDICTION AND VENUE

27.     The above paragraphs are incorporated herein by reference.

28.    Jurisdiction over the matter is conferred upon the Court by 28 USC § 1331, as the cause of action arises under federal law, to wit: 42 U.S.C. § 1981.

29.    Venue is proper in the Eastern District of New York, as the facts and transactions involved in the discrimination complained of herein occurred in large part in this judicial district. at JFK International Airport, in Queens County, New York.

## STATEMENT OF FACTS

30.    The foregoing paragraphs are incorporated herein by reference.

31.    In a pattern of unlawful, deliberate and discriminatory acts, Delta has created an environment of anti-Semitism and has directed police type actions toward Jewish, ethnic Israeli and Hebrew speaking employees and passengers traveling on flights to Tel Aviv.

32.    Upon information and belief, Delta management has sanctioned these actions by scheduling meetings with the Flight attendants on the New York to Tel Aviv flight, wherein discrimination was exhibited, including instructions and coaching that was suggestive of discriminatory and prejudicial treatment toward Jewish and ethnic Israeli customers and Flight Attendants.

33.    Upon information and belief, Delta's field service managers also directed discriminatory and prejudicial acts toward Jewish and ethnic Israeli flight attendants and would intimidate these flight attendants by insulting them and by insinuating that their attire was inappropriate, when it was not.  Upon information and belief, these managers were only critical towards the Jewish and ethnically Israeli flight attendants and did not harass those of other races or ethnicities.

34.    In addition to and/or in the alternative, Delta Air Lines has engaged in a pattern of intentionally discriminating and retaliating against senior employees based upon their age. Delta

has publicly stated that it is turning its attention to millennials, those born from the early 1980's to the late 1990's. Delta's CEO, Edward Bastian, has said by 2020, half of Delta's customers will be millennials and it is anticipated that Delta's employees will mirror the same balance.

35.     Delta is not in a position to hire a large number of employees to fulfill their millennial goals without removing a significant number of Delta's senior employee pool.

36.     In 2017, Delta released a reality show called "Earning Our Wings" about becoming a flight attendant. Upon information and belief, one of the motivations for this show was to attract younger "millennial" employee applicants.

37.     Upon information and belief, Delta has a de facto policy to terminate or discipline older employees due to perceived or manufactured infractions of company rules.

38.     Delta has wrongfully engaged in a pattern of intentionally discriminating and retaliating against employees on a discriminatory basis, in retaliation for using their FMLA. While not in all instances, Delta's actions target senior employees or employees with serious medical issues that would require special accommodations.

39.     Upon information and belief, Delta has a de facto policy of terminating or disciplining employees in retaliation for using their FMLA.

40.     Delta has wrongfully engaged in a pattern of intentionally discriminating and retaliating against employees on a discriminatory basis, in retaliation for requests and exercise of rights under the ADA.

41.     Upon information and belief Delta has wrongfully engaged in a pattern of terminating or disciplining employees in retaliation for requests and exercise of rights under the ADA.

PLAINTIFF FUKELMAN

42.     Upon information and belief as part of Delta's discriminatory and deliberate actions against Jews and ethnic Israelis, Ms. Fukelman, a Jewish, ethnic Israeli and Hebrew speaker, was targeted.  A devoted employee for over 10 years, Ms. Fukelman worked on Delta's New York to Tel Aviv flight.

43.     Despite her many years with Delta, on or about March 28, 2017, Ms. Fukelman was suspended and subsequently fired from her position at Delta.

44.     The firing of Ms. Fukelman was an act of discrimination, with no valid business purpose or justification.

45.     Delta used a pretext of Ms. Fukelman allegedly missing a flight due to a medical condition, but this is a pretext for discrimination because Ms. Fukelman had been granted FMLA and had experienced a side effect of a medication which caused her not to be able to fly.  The real reason was part of Delta's pattern and intent to discriminate against, discipline, discourage and terminate ethnically Jewish and Israeli persons.

46.     In addition to and/or in the alternative, the termination of Ms. Fukelman was due to her age as there was no legitimate reason for her termination.

47.     Though Ms. Fukelman is only 43 years old, she would often get picked on for being the oldest flight attendant. She was referred to as "Senior mama" by all the other flight attendants. Anytime something would go wrong on a flight, other flight attendants would place blame on "Senior mama".

48.     Ms. Kuba has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

PLAINTIFF KUBA

49.     Similiary, Ms. Kuba is a Flight Attendant of Jewish and ethnic Israeli background, and has worked for Delta for 21 years including her tenure at Northwest Air prior to its merger with Delta.  Ms. Kuba has witnessed deliberate and prejudicial. At all times relevant hereto, each of the Plaintiffs performed the duties of their employment in at least a satisfactory manner.

50.      Acts against Ms. Kuba's Hebrew ethnicity and ancestry and has been a target of Delta's discriminatory actions.

51.     At all times relevant to this action, Ms. Kuba was a flight attendant on the Delta, New York to Tel Aviv flight.

52.     Ms. Kuba has applied to Delta's Purser program, a managerial program for Delta's international flight attendants, three times in the past four years. Despite her qualifications, seniority and experience, which include experience in the Israeli Military, prior managerial experience, the fact that she speaks four languages, and an exceptional work history, Ms. Kuba has consistently been denied entry into the Purser program by the Delta HR Department.

53.     Ms. Kuba believes and therefore avers, upon observation, that ethnic Jewish and ethnic Israelis have a bad reputation within Delta's HR department.  Last year, she witnessed the firing of approximately 7 flight attendants who where who were of Jewish/Hebrew/Israeli ethnicity, and others who were disciplined wrongfully.

54.     In addition to and/in the alternative, denial of Ms. Kuba into the purser program is due to her age. Ms. Kuba is 54 years old. In spite of her seniority, qualifications and experience, she has been passed over for the Purser position several times by younger less experienced flight attendants.

55.    Upon information and belief, in furtherance of this ingrained and intentional discriminatory prejudice, Delta has initiated a police type action, directed at Delta employees that had travel companions traveling on an Israeli passport, passengers of Jewish descent and Hebrew speakers traveling on flights to Tel Aviv, assuming and wrongfully accusing Jewish employees and customers of violating the travel companion policy on flights to Israel from New York.

56.    Upon information and belief, this company action was focused solely on people traveling on people of Jewish ethnicity and ancestry, including Hebrew speakers traveling on flights to Tel Aviv, comprising both Flight Attendants and Jewish passengers, and no others.

57.    Upon information and belief, through this investigation, Delta intentionally terminated and disciplined a number of employees for providing companion travel benefits to persons of Israeli and Jewish ethnicity.

58.    Upon information and belief, this operation was accepted corporate policy, and it was known to those tasked with carrying out the operation, comprising managers, Delta employees with Jewish or Israeli descent or relationships with passengers that are of Jewish or Israeli descent were being purposefully and intentionally disciplined for actions that in no way violated the Delta Travel Companion policy.

59.    Upon information and belief, the said policy allows a Flight Attendant to name any friend or person they enjoy traveling with as a travel companion and that person receives the right to travel with or without the Flight Attendant.  This is the standard policy, and Flight Attendants regularly name friends as their Travel Companions.  However, when an ethnic Jewish Israeli named another Jew as a travel companion, or any flight attendant named another Jew,

Delta disallowed this practice and restricted the rights of benefits to both customers and Flight Attendants of Hebrew ancestry (i.e., ethnic Jews and Israelis).

60.     Upon information and belief, without any prior notification or warning, Delta disciplined, suspended and terminated numerous Delta employees who were either themselves Jewish or ethnic Israelis or shared their travel passes with Jewish or ethnic Israeli individuals.

61.     Ms. Kuba has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

<u>PLAINTIFFS SANCHEZ, MILLER, SUAREZ AND ALLEN</u>

62.     Upon information and belief, as part of Delta's prejudiced practice, Ms. Sanchez, Mr. Miller. Mr. Suarez and Ms. Allen, were swept up in Delta's discriminatory web as they had, within they had within their rights as described in the policy, provided travel passes to long-term friends and Israelis. Delta's Travel Companion program allows employees to share their travel privileges with "a friend or family member who is otherwise ineligible for travel pass privileges."  Delta requires that the employee must be "familiar" with their selected travel companion.

63.     On October 11, 2017, Ms. Sanchez was suspended without pay for allegedly violating Delta's Pass Travel Policy. Delta alleged that Ms. Sanchez was "unable to demonstrate basic knowledge" of her travel companion. A loyal Flight Attendant of over 30 years, Ms. Sanchez was completely blind-sided by these actions.

64.     Ms. Sanchez and her travel companion have been friends for over 40 years. They first kindled their relationship in 1975 when Ms. Sanchez was working for PanAm.

65.    Ms. Sanchez's travel companion travels often as he is involved in education and charitable programs in Israel, New York and Hong Kong. He also visits his children and grandchildren frequently in Israel.

66.    Sympathetic to her friend, Ms. Sanchez decided to share her travel companion pass with him.

67.    Upon information and belief, Delta questioned Ms. Sanchez's explanation of her friendship with her travel companion, concluding that Ms. Sanchez violated the travel pass policy and suspended her without any further opportunity to defend her actions.

68.    Upon information and belief, Delta never spoke with Ms. Sanchez's travel companion regarding his relationship with Ms. Sanchez, showing further that Delta's accepted, discriminatory and intentional operation was to net those Delta employees sharing travel passes with passengers of Jewish and Israeli ethnicity.

69.    After, Ms. Sanchez's suspension, her travel companion wrote a letter to Delta describing their long- time friendship.

70.    On November 16, 2017, Ms. Sanchez was given notice that she was allowed to return to work but was given a Final Corrective Action Notice, probation for a 36-month period along with suspension of her travel pass privileges for 36 months.

71.    On November 16, 2017, Ms. Sanchez was also removed from Delta's Purser program for a period of 36 months.

72.    Removal from the Purser program was a demotion for Ms. Sanchez. She had been a Purser for 45 years and removal from the Program caused her substantial humiliation. Ms. Sanchez was humiliated and embarrassed.  Unable to face her colleagues due to embarrassment, Ms. Sanchez chose to not continue working on the Tel-Aviv flight.

73.    In addition to and/or in the alternative, the discipline of Ms. Sanchez was due to her age of 72 years old as she had not violated any Delta policy.

74.    Ms. Sanchez has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

75.    On July 25, 2017, Mr. Miller, a dependable flight attendant of over 11 years, was called into Delta's management office and questioned extensively about his Jewish/Hebrew/Israeli travel companion. Delta wanted to know how he knew his travel companion and what his purpose of traveling to Israel was for. Mr. Miller was asked to provide phone records to prove he actually knew his travel companion. This line of questioning made Mr. Miller very uncomfortable.

76.    On September 24, 2017, Mr. Miller was suspended without pay and subsequently terminated by Delta on October 10, 2017, for allegedly violating Delta's Pass Travel Policy. Delta alleged that Mr. Miller's travel companion was traveling to Tel Aviv for business and that Mr. Miller did not really know his travel companion.

77.    Mr. Miller had been friends with his travel companion for over four years. They were introduced through a mutual friend in 2013. Mr. Miller knew his travel companion well and they got together often. Mr. Miller's travel companion did not travel to Israel for business, he traveled there to visit family. Despite being good friends with his travel companion, and not violating Delta's travel pass policy, Mr. Miller was fired without any valid reason or justification.

78.    Mr. Miller has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter

79.     On August 8, 2017, Mr. Suarez, a devoted flight attendant for over 12 years, was called into Delta's management office and questioned about his Jewish/Hebrew/Israeli travel companion. Delta alleged that Mr. Suarez was not familiar with his travel companion and requested phone records and screen shots of text messages between Mr. Suarez and his travel companion to prove that they were friends, which Mr. Suarez provided.

80.     On September 24, 2017, Mr. Suarez was suspended without pay and subsequently terminated by Delta on or about October 13, 2017, for allegedly violating Delta's Pass Travel Policy. Mr. Suarez has known his travel companion since 2009. Mr. Suarez would often stay at the crash pad (short term housing for flight attendants) his travel companion ran in Kew Gardens, NY. Over time, they became close friends and Mr. Suarez offered to share his travel pass with him. Mr. Suarez even began managing one of his travel companions crash pads for him.

81.     During his suspension, Mr. Suarez had such severe anxiety and depression, that on or about October 10, 2017, he notified that he would be requesting leave for disability.

82.     Mr. Suarez was terminated by Delta on or about October 13, 2018, just days after making his request for disability.

83.     In addition to and/or in the alternative, the termination of Mr. Suarez was in retaliation for requesting disability benefits under the ADA.

84.     Mr. Suarez has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter

85.     On October 19, 2017, Ms. Allen, a loyal flight attendant for over 18 years, was suspended without pay for and subsequently terminated by Delta on or about November 8, 2017,

for allegedly violating Delta's Travel Pass Policy. Delta alleged that Ms. Allen did not know basic "biographical and travel information" about her travel companion.

86.     Ms. Allen has known her travel companion, who is of Jewish, Hebrew and Israeli ethnicity, since in or around 2011. They two began dating in 2011 and Ms. Allen added him to her travel pass in 2012 as they intended to travel together. Shortly thereafter however, Ms. Allen was diagnosed with stage 3 breast cancer and was unable to travel. Ms. Allen's travel companion has family and a home in Israel and would travel there often, within the rules of Delta's travel pass policy. Though Ms. Allen and her travel companion are no longer dating, the two remain close friends.

87.     As further evidence of their relationship, Ms. Allen's travel companion wrote a letter to Delta describing the friendship.

88.     Delta terminated Ms. Allen November 8, 2017.

89.     In addition to and/in the alternative the firing of Ms. Allen was in retaliation for using her FMLA.

90.     Following Ms. Allen's bout with breast cancer, Ms. Allen was diagnosed with Multiple Sclerosis (MS). Ms. Allen's MS, caused her to miss work and use her FMLA days.

91.     In or around June 2011, Ms. Allen passed out while working in flight and the plane had to make an emergency landing. This emergency landing was at a great expense to Delta.

92.     One month later, on or about July 15, 2017, Ms. Allen was questioned by Delta management pertaining to her travel companion.

93.     Ms. Allen has filed a charge of discrimination with the EEOC and has either been issued a right to sue or her right to sue is the process of being issued by the EEOC.

PLAINTIFF ARIEL DAVID

94.     On October 24, 2017, Mr. David, who is of Jewish, Hebrew and Israeli ethnicity and a faithful flight attendant for over 11 years, was suspended without pay for allegedly violating Delta's Travel Pass Policy.

95.     Delta alleged that Mr. David was not "familiar" with a prior Jewish/Hebrew/Israeli travel companion whom had not been on his travel pass since in or around 2013. Mr. David's previous travel companion was his cousin and close friend, whom he had known since he was 12 years old.

96.     In or around November, 2017, Mr. David was given notice that he was allowed to return to work but was given a Final Corrective Action Notice, probation for a 36-month period along with suspension of his travel pass privileges for 36 months.

97.     The disciplinary action taken by Delta has no basis as there is no violation of the Travel Pass Policy.

98.     These actions by Delta are discriminatory as they were not tailored to address violations of the Travel Pass Policy rather focused more broadly to target Jewish and Israeli individuals.

99.     Mr. David exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

<u>PLAINTIFFS YARON GILINSKY AND TOMER BITON</u>

100.   On or about October 20, 2017, Mr. Gilinsky, who is of Jewish, Hebrew and Israeli ethnicity and a faithful flight attendant for over 7 years, was suspended without pay and subsequently terminated on or about October 13, 2017, for allegedly violating Delta's Travel Pass Policy. Delta alleged that Mr. Gilinsky did not know his travel companion.

101.   Mr. Gilinsky has been friends with his travel companion since 2013, when they met on a flight to Israel. They two men had many mutual interests, so they kept in touch and became good friends. In 2015, Mr. Gilinsky made him his travel companion.

102.   There was no reason for the firing of Mr. Gilinsky as he did not violate Delta's travel pass policy.

103.   In addition to and/in the alternative the firing of Mr. Gilinsky was in retaliation for using his FMLA. Mr. Gilinsky had FMLA due to nerve damage in his left arm that would cause his fingers to go numb. Mr. Gilinsky would call out of work due to FMLA about 2-3 times per month. Delta would sometimes give him trouble about calling out due to his FMLA. Mr. Gilinsky, felt that his use of FMLA made him a target by Delta.

104.   Mr. Gilinsky has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

105.   On or about September 20, 2017, Mr. Biton, who is of Jewish, Hebrew and Israeli ethnicity and a faithful flight attendant for over 7 years, called into HR and questioned about how well he knew his travel companion.

106.   Mr. Biton was later suspended without pay and subsequently terminated on or about December 21, 2017, for allegedly violating Delta's Travel Pass Policy. Delta alleged that there were "irregularities" with Mr. Biton's travel companion and that Mr. Biton did not know his travel companion.

107.   Mr. Biton had been close friends with his travel companion for about 15 years Mr. Biton's travel companion traveled to Israel often in order to visit his brother who was sick with cancer.  His travel companion sent in a notarized declaration to Delta, showing that they were

friends. He even provided medical records to prove that his brother had cancer. Despite all of this, Delta still terminated Mr. Biton's employment.

108.  In addition to and/in the alternative the firing of Mr. Biton was in retaliation for using his FMLA. Mr. Biton had FMLA for panic disorder and migraines. Mr. Biton also takes medications to cope with his stress and anxiety. When he was not feeling well, Mr. Biton would have to use his FMLA call off of trips. Delta would sometimes imply that Mr. Biton was abusing his FMLA.

109.  Mr. Biton has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

110.  This Delta operation and subsequent suspension and firing of Delta flight attendants reverberated throughout many flight attendants of Jewish and Israeli ethnicity, including Ms. Fukelman, who was too afraid and threatened to share her travel pass with any person who she considered a friend, understanding the rules would be applied differently to her.

<u>PLAINTIFF PANZA</u>

111.  Mr. Panza, a senior flight attendant on Delta's Tel-Aviv flights, was also fearful of the repercussions should he share his travel pass.

112.  The Delta operation caused an atmosphere of hostility for Flight Attendants on the Tel Aviv Flight.

113.  Mr. Panza, experiencing the hostile environment, and being a supporter of his Jewish and Israeli Flight Attendants and passengers, and fearing disciplinary repercussions should he share his travel pass, requested to be transferred from the New York to Tel-Aviv flight to a Florida flight in order avoid this intimidating environment.

114.  In addition to and/in the alternative, Mr. Panza's hostile treatment by Delta is due to his age of 54, as he has not broken any of Delta's rules.

115.  Mr. Panza has exhausted administrative remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter.

116.  Upon information and belief, this operation by Delta was a biased intentional act focused solely on those of Jewish/Hebrew and/or Israeli ethnicity.

117.  Each of the Plaintiffs believes and therefore avers, in the addition and/or in the alternative, that the foregoing conduct violated other laws including but not limited to Title VII of the Civil Rights Act, as amended, the Age Discrimination in Employment Act, and/or other laws that provide exhaustion of administrative remedies with the EEOC or other agencies.

**DELTA ENGAGED IN A RACIALLY BIASED INVESTIGATION**

118.  Upon information and belief, Delta instructed and guided their management in a biased and discriminatory investigation out of New York that focused on Jewish, Hebrew and/or Israeli's traveling to Tel Aviv, Israel by way of New York. Delta's managers and HR personnel were given specific talking points and questions referencing actual or perceived Jewish, Israeli and/or Hebrew characteristics of the both the employees and the travel companions involved in suspected fraudulent activities.  Instead of reasonably instigating the matter, Delta used it as an opportunity to falsely accuse all of said persons of being involved in deceit based solely upon their actual or perceived ethnicity and/or religion or association with individuals of same.

This type of inquiry by Delta was racially biased and prejudicial and focused solely on individuals of Jewish, Hebrew and/or Israeli descent.

**STATEMENT OF CLAIMS**

## COUNT I
## RETALIATION IN VIOLATION OF FMLA

### *Plaintiffs Ms. Fukelman, Ms. Allen, Mr. Gilinsky and Mr. Biton*

119.  The foregoing paragraphs are incorporated herein by reference.

120.  In addition to and/or in the alternative to the proceeding claims, the foregoing adverse employment actions taken against Plaintiffs in violation of the FMLA.

121.  Delta conduct constitutes unlawful retaliation against Plaintiffs in violation of their rights under the FMLA, 29 U.S.C. §2615(a).

122.  Delta acted purposely and with malice with the intent to injure Plaintiffs.

123.  The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiffs employment

124.  As a direct and proximate result of Delta's actions and unlawful retaliation against Plaintiffs, Plaintiffs have suffered mental and emotional damages, Plaintiffs have incurred, and will continue to incur, substantial economic damages.

## COUNT II.
## ADA RETALIATION

### *Plaintiffs Mr. Suarez, Ms. Fukelman, Ms. Allen, Mr. Gilinsky and Mr. Biton*

125.   The foregoing paragraphs are incorporated herein by reference.

126.  In addition to and/or in the alternative to the proceeding claims, the foregoing adverse employment actions taken against Plaintiffs, constituted retaliation for Plaintiffs lawful requests and exercise of rights under the ADA, 42 U.S.C. § 12101.

127.  Section 102 of the ADA, 42 U.S.C. Section 12112, prohibits discrimination on the basis of disability. Plaintiffs have either a disability and/or perceived disability under the ADA.

128.  Delta acted purposely with malice with the intent to injure Plaintiffs.

129.  The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiffs employment

130.  As a direct and proximate result of Delta's actions and unlawful retaliation against Plaintiff, Plaintiff has suffered mental and emotional damages, Plaintiffs have incurred, and will continue to incur, substantial economic damages.

## COUNT III.
## AGE DISCRIMINATION

### *Plaintiffs Ms. Fukelman, Ms. Sanchez, Ms. Kuba and Mr. Panza*

131.  The foregoing paragraphs are incorporated herein by reference.

132.  In addition to and/or in the alternative to the proceeding claims, the foregoing adverse employment actions taken against Plaintiffs, constituted age discrimination under the ADEA.

133.  Delta conduct constitutes unlawful discrimination against Plaintiffs in violation of their rights under the ADEA, 29 U.S.C. § 621 *et seq.*

134.  Delta acted purposely and with malice with the intent to injure Plaintiffs.

135.  The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiffs employment.

136.  As a direct and proximate result of Delta's actions and unlawful retaliation against Plaintiffs, Plaintiffs have suffered mental and emotional damages, Plaintiffs have incurred, and will continue to incur, substantial economic damages.

## COUNT IV.
## 42U.S.C. Sec. 1981
## DISCRIMINATION IN THE MAKING
## AND ENFORCEMENT OF CONTRACTS
## BASED UPON JEWISH/HEBREW/ISRAELI ETHNICITY

### *Plaintiffs v. Defendant Delta Air Lines, Inc.*

137.  The above paragraphs are hereby incorporated herein by reference.

138.  The foregoing actions of Defendant violated Plaintiffs' rights pursuant to 42 USC Sec.

1981, which provides, in pertinent part, as follows:

§ 1981. Equal rights under the law
(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every
State and Territory to make and enforce contracts.... as is enjoyed by white citizens, and shall be
subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to
no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making,
performance, modification, and termination of contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the contractual
     relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by
nongovernmental discrimination and impairment under color of State law.
Id. (emphasis added).

139.  Delta Air Lines evidenced a settled intent to discriminate against Plaintiffs by

interfering with Plaintiffs' rights to the performance and enjoyment of the benefits of their

contracts of employment with Delta.

140.  Delta Air Lines wrongfully targeted those of Jewish, Hebrew and Israeli ancestry and

ethnicity, on the basis of race, intentionally.

141.  Delta Airlines intentionally restricted the Plaintiffs' contractual benefits based upon

illicit discrimination.

142.  The aforesaid conduct of Delta was intentional and undertaken in reckless disregard

for the federally protected civil rights of Plaintiffs.

143.  Delta also retaliated against Plaintiffs for raising Complaints.

144. Plaintiffs' work environments constitute a hostile and discriminatory environment in that the discrimination they must suffer is pervasive and/or severe.

145. As a result of the said violation of 42 U.S.C. § 1981, Plaintiffs have suffered discrimination, humiliation, embarrassment, and other harms, and are entitled to entry of judgment in their favor, and against Defendant, together with an award of declaratory and injunctive relief, damages, and ancillary relief as provided by 42 U.S.C. § 1988.

## COUNT V.
## 42U.S.C. Sec. 1985
## Civil Rights Conspiracy

146. The foregoing paragraphs are incorporated herein by reference.

147. The foregoing conduct of Defendant violates Plaintiffs' rights pursuant to 42 U.S.C. Sec. 1985, which proscribes any agreement or conspiracy to violate Plaintiffs' federally protected civil rights, including those rights under 42 U.S.C. Sec. 1981.

## COUNT VI.
## VIOLATION OF TITLE VII

148. The foregoing paragraphs are hereby incorporated herein by reference.

149. By committing the foregoing acts of discrimination against Plaintiffs, Defendant has violated Title VII.

150. Said violations were done with malice and/or reckless indifference and warrant the imposition of punitive damages.

151. As a direct and proximate result of Defendants violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

152. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant discriminatory acts unless and until this Court grants the relief requested herein.

## COUNT VII.
## VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW (NYHRL)

153.   The foregoing are incorporated herein by reference.

154.   The above acts and practices of Delta constitute unlawful discriminatory employment practices under the New York Human rights Law.

155.   As a result of Delta's discriminatory acts, Plaintiffs have suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

## COUNT VIII.
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

156.   The foregoing paragraphs are incorporated herein by reference.

157.   The above acts and practices of Delta constitute unlawful discriminatory employment practices under the New York City Human rights Law.

158.   As a result of Delta's discriminatory acts, Plaintiffs have suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

## COUNT IX.
## VIOLATION OF THE GEORGIA AGE DISCRIMIMINATION ACT

159.   The foregoing paragraphs are incorporated herein by reference.

160.   The foregoing adverse employment actions taken against Plaintiffs, constituted age discrimination under the Georgia Age Discrimination Act.

161.   Delta conduct constitutes unlawful discrimination against Plaintiffs in violation of their rights under GA Code § 34-1-2.

162.  As a result of Delta's discriminatory acts, Plaintiffs have suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in favor of Plaintiffs and against Delta, and Order the following relief:

a.  A declaratory judgement declaring that Delta has illegally discriminated against each of the Plaintiffs;

b.  Reinstatement of Ms. Fukelman's employment;

c.  Reinstatement of Mr. Miller's employment;

d.  Reinstatement of Mr. Suarez's employment;

e.  Reinstatement of Ms. Allen's employment;

f.  Reinstatement of Mr. Gilinsky's employment;

g.  Reinstatement of Mr. Biton's employment;

h.  Removal of all restrictions from Ms. Sanchez's record and reinstatement to Purser;

i.  Reinstatement of Ms. Sanchez's travel pass privileges;

j.  Removal of all restrictions from Mr. David's record;

k.  Reinstatement of Mr. David's travel pass privileges

l.  Promotion of Ms. Kuba;

m.  Removal of all restrictions from Mr. Panza's record;

n.  Make whole order for each Plaintiff, both in terms of pay, compensation, benefits, terms and conditions and emoluments of employment, including but not limited to back pay, front pay, and any pay differential;

o.  Payment of compensatory and punitive damages, to all Plaintiffs in an amount to be determined at trial; and,

p.   An appropriate order directing and requiring the cessation of all acts of proscribed racial discrimination as required pursuant to 42 U.S.C. § 1981, including but not limited to a civil rights monitor or trustee, and for such further or additional relief as is appropriate in the interests of justice.

q.  A declaratory judgment that Defendant has violated 42 U.S.C. Sec. 1985 and an order for payment of all compensatory and punitive damages awarded after trial;

r.  Declaring the acts and practices complained of herein are in violation of the ADA 42 U.S.C. Section 12101 et. seq., the FMLA, the ADEA and NY State Human Rights Law;

s.  An award of Plaintiffs; attorneys fees and costs of suit as provided by 42 U.S.C. § 1988.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial as to all issues so triable herein.

[remainder of page left intentionally blank]

Respectfully submitted,

MILDENBERG LAW FIRM
Brian R. Mildenberg, Esq.
PA Attorney ID No. 84861
1735 Market St.,
Suite 3750
Philadelphia, PA 19103

215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiffs
(*pro hac vice* pending)

WEISBERG LAW
Matthew B. Weisberg, Esq.
PA Attorney ID No. 85570
7 South Morton Ave
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
Attorney for Plaintiffs
(*pro hac vice* pending)

PAWAR LAW
GROUP P.C.
*/s/ Vik Pawar*
Vik Pawar, Esquire
20 Vesey Street, Suite 1210
New York, New York 10007
(212)-571-0805 (phone)
(212)-571-0938 (fax)
(Local Counsel)

Dated: July 2, 2018